## PEAVEY v. REED CO., Inc.
### Civil Action No. 2114.

District Court, E. D. New York.

May 15, 1942.

See, also, D.C., 41 F.Supp. 351.

Griffing & Smith, of Riverhead, L. I., N. Y. (Dominick Blasi, of New York City, of counsel), for plaintiff.

George G. Lake, of New York City, for defendant.

BYERS, District Judge.

In this action the plaintiff seeks the equitable relief of specific performance of an oral agreement by defendant to execute and deliver to him a general release, in exchange for one running from him to the defendant, and which he has tendered.

The evidence satisfactorily establishes that on June 20, 1939, there was negotiated between the plaintiff, acting for himself, and the defendant, as represented by Mr. Ralph W. Gwinn, an attorney at law thereunto duly authorized, an agreement whereby the plaintiff, who had held certain patents as trustee for the defendant, would execute, acknowledge and deliver an assignment of the Letters Patent to an assignee designated by the defendant company; and the defendant would pay him the sum of $1,500.00 in full for his claim for services and disbursements; and general releases were to be exchanged as an incident of that transaction.

So much was testified to by the plaintiff, and the said attorney, Mr. Gwinn, and there was nothing offered for the defendant in contradiction.

The $1,500.00 was paid in cash and notes which were met in due course, and the assignment of Letters Patent was duly executed and delivered; these things were accomplished on June 20, 1939, in reliance upon Mr. Gwinn's telephone assurance that the general release from the defendant would be forthcoming on the following day, and that the failure to make contemporaneous delivery was caused by the absence of an officer who could execute and acknowledge on behalf of the defendant.

The defenses pleaded in the answer follow denials of the material allegations in the complaint, and are:

■ 1. That an action pending in the Southern District of New York would afford the plaintiff a convenient opportunity to assert the matters alleged in the complaint.

That does not seem to be dispositive, because his right to have the release, as contracted for, is the only issue here tendered.

■ 2. That the Court should decline jurisdiction because of that suit.

This does not touch the merits, and the Court has already accepted jurisdiction by denying a motion to remand.

■ 3. That the attorney, Mr. Gwinn, did not have authority so to engage, on behalf of defendant.

The evidence refutes this. He clearly had authority to negotiate a settlement, else the money would not have been paid pursuant to the arrangement concluded by him with the plaintiff.

■ 4. That the plaintiff was guilty of oppressive conduct in exacting the financial payment recited, because in addition to holding the patents, as trustee under a written agreement, he was required by the terms of the latter to surrender or assign the patents pursuant to appropriate corporate action, and was entitled to receive only $100.00, being two years' trustee's fees at the contractual rate. That he had been a director, president and attorney for the defendant company during 1938, and in such capacities "owed the highest fealty to defendant".

He was neither an officer, director nor attorney for defendant on June 20, 1939, and then it was that he was called upon to deliver the assignment in question.

The Court has not been sufficiently informed by the evidence, as to whether, assuming the sum demanded by the defendant represented legal fees and disbursements, the amount was excessive; nor does it clearly appear that he refused to execute the assignment which he was clearly bound to do as trustee under the agreement in question, unless and until the $1,500.00 was paid to him. Had that been shown, I should suppose that the action of

an attorney who used his temporary position as trustee of his client's patents to exact payment of a bill for professional services, would be so oppressive as to warrant a court exercising equitable jurisdiction to decline to aid him, to say nothing more.

However, the evidence falls short of putting the plaintiff in so unpleasant a position.

Between April and June 16, 1939, there seem to have been one or more amicable interviews between the plaintiff and officers of the defendant, respecting the disestablishment of business and professional relationship upon his part. Apparently there was a recognition of financial obligation on the part of the defendant company for services and disbursements.

The evidence is as consistent with reluctance upon the defendant's part to require from the plaintiff the assignment of the patents except as part of a general adjustment of all pending matters, as it is with the employment of the trusteeship of the patents as a lever to pry loose from the defendant's sparce financial resources, the amount of a bill which would otherwise be uncollectible. In fact, no bill seems to have been rendered which was then (June 20, 1939) pending and unpaid.

It would have been appropriate for a retiring fiduciary to seek to obtain some kind of recognition from the beneficiary, that no duties remained unfulfilled at the termination of the relationship. Something equivalent to a settlement of accounts at the close of a trust administration in the case of an ordinary trust.

Such seems to have been the mutual purpose here, and since the plaintiff has no adequate remedy at law, no reason appears why the defendant should not be required to live up to the undertaking given on its behalf, namely, to execute, acknowledge and deliver to the plaintiff, in exchange for a similar document running to it from him, a general release in the usual form, as of June 20, 1939, of any and all claims, etc., against him, the said plaintiff.

Settle decree on notice, without costs.